Katherine D. Prescott (SBN 215496)
Jeanel N. Sunga (SBN 333815)
Fish & Richardson P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Phone: 650-893-5070
Fax: 650-839-5071
Email:  prescott@fr.com
Email: sunga@fr.com

Kathryn Quisenberry (admitted *pro hac vice*)
Fish & Richardson P.C.
1221 McKinney Street, Suite 2800
Houston, TX 77010
Phone: 713-654-5300
Fax: 713-652-0109
Email:  quisenberry@fr.com

Joy Kete (admitted *pro hac vice*)
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02110
Phone: 617-542-5070
Fax: 617-542-8906
Email:  kete@fr.com

*Attorneys for Defendant*
*APPLE INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| R.N NEHUSHTAN TRUST LTD.,<br><br>         Plaintiff,<br><br>    v.<br><br>APPLE INC.<br><br>         Defendant. | Case No. 3:22-CV-01832-WHO<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>Date:     January 4, 2023<br>Time:    2:00 p.m.<br>Dept:    Courtroom 2, 17th Floor<br>Judge:   Hon. William H. Orrick |

**TO THE PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Civil L.R. 7, on January 4, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable William H.

Orrick Judge of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Apple Inc. ("Apple") Apple will and hereby does move for an order staying all proceedings in this action pending final resolution of the pending *inter partes* review ("IPR") proceedings relating to U.S. Patent Nos. 9,642,002 and 9,635,544.

As set forth in the accompanying Memorandum of Points and Authorities, all factors weigh in favor of a stay—the case is still at an early stage, the two IPR petitions will likely significantly simplify or moot many issues before this Court, and a stay will not prejudice Plaintiff R.N Nehushtan Trust Ltd. ("RNN Trust").

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Kathryn Quisenberry, and supporting documents, on such matters as may be judicially noticed, on any oral argument the Court may hear, and on such other and further information as the Court may consider.

On November 22, 2022, Apple filed IPRs covering all asserted claims of U.S. Patent Nos. 9,642,002 and 9,635,544.  That same day, Apple asked counsel for RNN Trust for its availability to meet and confer on this Motion.  The parties met and conferred on November 28, 2022, and counsel for RNN Trust informed Apple that it opposes this Motion.  Apple filed this Motion promptly thereafter.

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

     A.    Status of the IPRs ........................................................................................ 2

     B.    Procedural Posture ...................................................................................... 2

III.  LEGAL STANDARD............................................................................................... 3

IV.  ARGUMENT ........................................................................................................... 4

     A.    A Stay Is Appropriate Because Discovery Is in Its Early Stages........................ 4

     B.    The Patent Office Proceedings Will Simplify The Issues..................................... 6

     C.    RNN Trust Will Suffer No Undue Prejudice or Tactical Disadvantage From A Stay ................................................................................. 10

V.   CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
  No. 14-CV-01012-SI, 2015 WL 545534 (N.D. Cal. Feb. 9, 2015) .......................................... 11

*Anza Tech., Inc. v. Toshiba Am. Elec. Components Inc.*,
  No. 17-CV-07289-LHK, 2018 WL 4859167 (N.D. Cal. Sept. 28, 2018) ............................. 6, 7

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................................................................ 3

*CPC Patent Technologies Pty Ltd. v. Apple Inc.*,
  No. 5:22-cv-02553-EJD, Dkt. No. 119 (N.D. Cal. Sept. 6, 2022) ........................................... 7

*CPC Patent Technologies Pty Ltd. v. Apple Inc.*,
  No. 5:22-cv-02553-EJD, Dkt. No. 142 (N.D. Cal. Sept. 6, 2022) ........................................... 3

*Cypress Semiconductor Corp. v. LG Elecs., Inc.*,
  No. 13-cv-04034-SBA, 2014 WL 5477795 (N.D. Cal. Oct. 29, 2014) ................................. 10

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
  No. 14-cv-05330-HSG, 2015 WL 1967878 (N.D. Cal. May 1, 2015) .................................. 11

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ............................................................................................... 3

*Evolutionary Intel. LLC v. Yelp Inc*,
  No. C-13-03587 DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) ............................... 6, 7

*Finjan, Inc. v. Symantec Corp.*,
  139 F.Supp.3d 1032 (N.D. Cal. 2015) ...................................................................... 3, 6, 8, 11

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) ............................................................................................... 7

*IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co Ltd*,
  No. 15-CV-03752-HSG, 2015 WL 7015415 (N.D. Cal. Nov. 12, 2015) .............................. 10

*Landis v. N. Amer. Co.*,
  299 U.S. 248 (1936) ................................................................................................................ 3

*Largan Precision Co. v. Motorola Mobility LLC*,
  No. 21-cv-09138-JSW, 2022 WL 2954935 (N.D. Cal. July 26, 2022) ............................ 3, 5, 6

*Nichia Corp. v. Vizio, Inc.*,
  No. SACV 18-00362 AG (KESx), 2018 WL 2448098, (C.D. Cal. May 21, 2018) ................. 7

*PersonalWeb Techs, LLC v. Apple Inc.*,
  69 F. Supp. 3d 1022 (N.D. Cal. 2014) ............................................................................... 4, 11

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
  No. 5:13-CV-01356-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) .......................... *passim*

*Pragmatus AV, LLC v. Facebook, Inc.*,
  No. 11-cv-02168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11, 2011) ..................................... 3

*Tire Hanger Corp. v. My Car Guy Concierge Servs. Inc.*,
  No. 5:14-cv-00549-ODW, 2015 WL 857888 (C.D. Cal. Feb. 27, 2015) ................................ 7

*Twilio, Inc. v. TeleSign Corp.*,
  No. 16-CV-06925-LHK, 2018 WL 1609630 (N.D. Cal. Apr. 3, 2018) ................................. 11

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
  No. 5:20-CV-05501-EJD, 2021 WL 1893142 (N.D. Cal. May 11, 2021) ..................... 3, 4, 5, 6

**Statutes**

35 U.S.C. § 314(b) ............................................................................................................................ 2

35 U.S.C. § 315(e)(2) ....................................................................................................................... 8

35 U.S.C. § 316(a)(11) ........................................................................................................... 2, 3, 11

**Other Authorities**

37 CFR § 42.107 .............................................................................................................................. 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

On November 22, 2022, Apple filed petitions for *inter partes* review ("IPR") challenging U.S. Patent Nos. 9,642,002 and 9,635,544 (the "Asserted Patents"). Apple's IPR petitions seek to invalidate all asserted claims of the Asserted Patents. The Patent Trial and Appeal Board ("PTAB") must decide whether to institute the IPRs within six months after they are filed, and if instituted, must make a final decision on the IPRs within one year of institution. There is a strong likelihood that the PTAB will institute the IPRs based on the substantial evidence presented in Apple's petitions. A stay will likely simplify the issues and reduce the burden on the Court and parties. Courts in this district have granted stays upon the filing of IPRs and do not wait for institution to enter the stay.

A stay now is the prudent, efficient course for managing this case. Each of the three relevant factors weighs in favor of a stay. First, this litigation is still in its early stages. Fact discovery is far from complete, neither party has taken any depositions, and expert discovery has not yet begun. Claim construction is also incomplete, and a substantial amount of work remains before the case is ready for trial (trial is not even scheduled to begin until February 2024). Second, a stay is likely to significantly simplify the issues in this case because all asserted claims of the Asserted Patents are being challenged through IPRs. If the PTAB cancels these claims, the case is moot. Even if some of the asserted claims survive IPRs, a final determination from the PTAB would narrow the claims RNN Trust could assert, the invalidity arguments that Apple could raise, or both. This is especially true given the overlapping nature of the asserted claims of the Asserted Patents. Third, RNN Trust will not suffer any prejudice or tactical disadvantage as the result of a stay. RNN Trust is a non-practicing entity that does not make or sell any product covered by the Asserted Patents. Nor does RNN Trust compete with Apple. Any conceivable harm RNN Trust may suffer from a stay can be remedied with monetary damages.

Accordingly, all three factors strongly favor staying this case pending IPRs.

## II. BACKGROUND

On March 23, 2022, RNN Trust filed a complaint in the United States District Court for the Northern District of California, asserting the following patents against Apple: U.S. Patent Nos. 9,642,002 ("'002 patent") and 9,635,544 ("'544 patent"). ECF 1. RNN Trust alleges that certain Apple products that provide a secure protocol for software updates infringe both patents.

### A. Status of the IPRs

On November 22, 2022, Apple filed IPRs on all asserted claims. Quisenberry Decl. Ex. A, IPR 2022-00231, Paper No. 1 ('002 Patent Petition); Ex. B, IPR 2022-00230, Paper No. 1 ('544 Patent Petition). RNN Trust's preliminary responses, if it chooses to file them, are due in February 2023. 37 CFR § 42.107. The PTAB's institution decisions are then due in May 2023. *See* 35 U.S.C. § 314(b); 37 CFR § 42.107. If instituted, the PTAB's final written decisions will be due no later than a year after the date of institution, around May 2024. *See* 35 U.S.C. § 316(a)(11).

### B. Procedural Posture

On May 23, 2022, Apple filed a Motion to Dismiss. ECF 28. The Court denied Apple's Motion to Dismiss on July 6, 2022. ECF 39. On July 8, 2022, this Court issued an order regarding the case schedule, setting trial for February 26, 2024. *See* ECF 43. On August 5, 2022, RNN Trust served its infringement contentions, and on September 26, 2022, Apple served its invalidity contentions. On October 12, 2022, RNN Trust filed an unopposed motion for leave to amend its infringement contentions, which this Court granted on October 28, 2022. *See* ECF 57, 59. The parties exchanged proposed terms for construction on October 3, 2022, and proposed claim constructions and extrinsic evidence on October 24, 2022. The parties filed the joint claim construction and prehearing statement on November 18, 2022. *See* ECF 60. The parties have not exchanged or filed any claim construction briefs and will not begin to do so until January 2023. *See* ECF 35, 43. The *Markman* hearing is scheduled for March 3, 2023, which is more than three months away. *See* ECF 43. No fact depositions have taken place and fact discovery does not close for approximately seven months. *See* ECF 43 (setting close of fact discovery for June 19, 2023). Expert discovery does not close until September 18, 2023, which is approximately ten

months away, and the summary judgment hearing in this case is not scheduled to occur until November 29, 2023.  *Id.*

### III. LEGAL STANDARD

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. N. Amer. Co.*, 299 U.S. 248, 254-55 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  District courts have ample "authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis*, 299 U.S. at 254).

In this district, there is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340, at *3 (N.D. Cal. Jan. 13, 2014) (internal citations omitted); *see also Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-cv-02168-EJD, 2011 WL 4802958 at *2 (N.D. Cal. Oct. 11, 2011).  This Court has stayed actions even when IPRs have not yet been instituted. *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.,* No. 5:20-CV-05501-EJD, 2021 WL 1893142, at *1 (N.D. Cal. May 11, 2021) ("a stay pending the PTAB's decision on whether to institute IPR petitions will promote efficiency by avoiding the expenditure of limited judicial resources between now and when the last PTAB institution decision will be rendered"); *see also Largan Precision Co. v. Motorola Mobility LLC*, No. 21-cv-09138-JSW, 2022 WL 2954935, at *2 (N.D. Cal. July 26, 2022) ("If the PTAB decides to institute review, its decision on the asserted claims may simplify and clarify the issues to be litigated by the parties. This 'weighs heavily in favor of granting the stay.'…the fact that the PTAB has not yet instituted proceedings does not alone warrant denying the motion to stay."); *Finjan, Inc. v. Symantec Corp.*, 139 F.Supp.3d 1032, 1037 (N.D. Cal. 2015) ("Were the Court to deny the stay until a decision on institution is made, the parties and the Court would expend significant resources on issues that could eventually be mooted by the IPR decision"); *CPC Patent Technologies Pty Ltd. v. Apple Inc.*, No. 5:22-cv-02553-EJD, Dkt. No. 142 (N.D. Cal. Sept. 6,

1  2022) ("The Court further STAYS the case in its entirety until November 17, 2022, pending a
2  decision on institution of both patent petitions from the PTAB.").
3     The Court should "examine three factors when determining whether to stay a patent
4  infringement case pending review or reexamination of the patents: (1) whether discovery is
5  complete and whether a trial date has been set; (2) whether a stay will simplify the issues in
6  question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear
7  tactical disadvantage to the nonmoving party." *PersonalWeb Techs, LLC v. Apple Inc.*, 69 F.
8  Supp. 3d 1022, 1025 (N.D. Cal. 2014) (citations and quotations omitted); *see also Viavi*, 2021 WL
9  1893142 at *1.

10 **IV.    ARGUMENT**

11    The Court should stay this action pending IPRs because all three factors weigh in favor of
12 a stay. *First,* this litigation is still in its early stages and there is a substantial amount of work
13 remaining before the case is ready for trial. *Second*, a stay could dramatically simplify the issues
14 in question because all asserted claims of the Asserted Patents are being challenged in the IPR
15 petitions. *Third*, RNN Trust will not suffer any prejudice or tactical disadvantage as the result of a
16 stay because it is not a competitor of Apple, nor does it sell a product of its own.

17    **A.    A Stay Is Appropriate Because Discovery Is in Its Early Stages**

18    The early stage of litigation strongly favors a stay. This factor concerns whether the bulk
19 of the work in the case lies ahead or in the past. *See, e.g., Viavi*, 2021 WL 1893142, at *1 ("There
20 is substantial work remaining before the case is ready for trial."); *see also PersonalWeb Techs.,*
21 *LLC v. Facebook, Inc.*, 2014 WL 116340, at *3 (finding this factor weighs in favor of a stay where
22 "a claim construction order has been issued and the close of fact discovery is fast approaching" but
23 "a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation,
24 and trial itself—lies ahead."). In particular, courts consider whether fact discovery is complete,
25 expert discovery has begun, depositions have taken place, a trial date has been set, and a
26 substantial amount of work remains before the case is ready for trial. *See Viavi*, 2021 WL
27 1893142, at *1 ("Here, all of the factors above favor staying this case. First, fact discovery is in
28 its early stages, expert discovery has not begun, and a trial date has not been set."); *see also*

1  *Largan Precision*, 2022 U.S. Dist. LEXIS 132610, at *10 (finding this factor weighs in favor of a stay where "[t]he parties served mandatory disclosures under the Local Patent Rules, answered initial discovery requests, and produced some documents. No depositions have been noticed. Claim construction briefing has not begun, and the claim construction hearing is two months away. No trial date has been set.").

Here, this factor weighs strongly in favor of granting a stay because the case is in its early stages and there is a substantial amount of work remaining before the case is ready for trial. Fact discovery does not close for seven months, expert discovery does not close for ten months, and no depositions have occurred. Moreover, while the parties have completed some initial claim construction disclosures, no briefing has yet been submitted, and will not be until early next year. Indeed, RNN Trust itself acknowledges that the parties "are early in discovery" and elected to postpone source code review until after claim construction in order to be "as efficient as possible in the review." Quisenberry Decl. Ex. C, Oct. 24, 2022 Ltr. fr. J. North to K. Quisenberry. Courts in this district have granted stays for cases at a similar stage of its proceedings. For example, in *Largan Precision*, the Court granted a pre-institution stay where the parties had exchanged their respective contentions, served initial discovery requests, had not taken any witness depositions, and claim construction briefing had not begun yet. 2022 WL 2954935, at *2.

Courts in this district have even stayed cases that are much further along than this one. As another example, in *PersonalWeb Techs., LLC v. Facebook, Inc.*, the Court granted a stay pending IPRs despite that "[t]he parties and courts ha[d] already invested significant time and effort into these matters" and "a claim construction order ha[d] been issued and the close of fact discovery [was] fast approaching." 2014 WL 116340 at *3. Additionally, even though only a week of fact discovery remained when the stay was granted, the court reasoned that "a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation, and trial itself—l[ay] ahead." *Id.* Thus, the court concluded, the stage-of-case factor weighed "slightly in favor of a stay." *Id.* at *4.

The stage of the case here thus strongly favors granting a stay pending IPRs because the bulk of the work lies ahead. *See Viavi*, 2021 WL 1893142, at *1 ("There is substantial work

5

APPLE INC.'S MOTION TO STAY
Case No. 3:22-CV-01832-WHO

remaining before the case is ready for trial."). Fact discovery is not complete, no depositions as part of fact discovery have been taken, expert discovery has not begun, and the Court's set trial date is almost a *year and a half* away. The Court has yet to expend significant resources on this case and thus, a stay will not disrupt any pre-existing case management plan. This factor strongly favors a stay.

### B. The Patent Office Proceedings Will Simplify The Issues

The second factor—simplification of issues and conservation of judicial and party resources—likewise weighs in favor of a stay. Courts in this district have recognized the significant efficiency that can result from an early stay even where the PTAB has not yet instituted its review. *Viavi*, 2021 WL 1893142 at *1 ("a stay pending the PTAB's decision on whether to institute IPR petitions will promote efficiency"). Indeed, this district has a liberal policy of granting stays pending reexamination in the interest of judicial economy, which frequently leads to pre-institution stays. *See, e.g., PersonalWeb Techs., LLC v. Facebook, Inc.*, 2014 WL 116340, at *3 (finding there is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."); *Finjan*, 139 F.Supp.3d at 1037 (N.D. Cal. 2015) ("Accordingly, the Court finds that staying the case pending the PTO's decision whether to institute IPR is the most efficient use of resources at this juncture."); *Largan Precision*, 2022 WL 2954935, at *2, *5 (entering pre-institution stay); *Evolutionary Intel.*, 2013 WL 6672451, at *7 (finding that this district's liberal policy favoring stays pending reexamination warrants a stay even if the Patent Office is still considering whether to grant a party's reexamination request); *Anza Tech.*, 2018 WL 4859167, at *2 ("Therefore, staying the case pending the resolution of the petitions and the IPRs, if instituted, could simplify the case because the PTAB could cancel or amend some or all of the asserted claims."). In *Viavi*, this Court found that "a stay pending the PTAB's decision on whether to institute IPR petitions will promote efficiency by avoiding the expenditure of limited judicial resources between now and when the last PTAB institution decision will be rendered." 2021 WL 1893142, at *1.

The same efficiencies exist here if a pre-institution stay is granted. A stay pending the PTAB's decision on whether to institute Apple's IPR petitions will enhance efficiency by avoiding

1  use of judicial resources between now and when the PTAB institution decision will be rendered
2  (and could potentially moot the entire case). *Evolutionary Intel. LLC v. Yelp Inc*, No. C-13-03587
3  DMR, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013).  For that reason, "it is not uncommon
4  for courts to grant stays pending reexamination prior to the PTO deciding to reexamine the
5  patent," and this court has consistently granted stays prior to IPR institution decisions.  *Anza*
6  *Tech., Inc. v. Toshiba Am. Elec. Components Inc.*, No. 17-CV-07289-LHK, 2018 WL 4859167, at
7  *2 (N.D. Cal. Sept. 28, 2018); *see also CPC Patent Technologies Pty Ltd. v. Apple Inc.*, No. 5:22-
8  cv-02553-EJD, Dkt. No. 119 (N.D. Cal. Sept. 6, 2022).  Entering a stay at this time would confer
9  minimal, if any, burden on RNN Trust as institution decisions are anticipated starting in May
10 2023.  Moreover, if the PTAB cancels all claims at issue there will be no need for the Court to
11 consider any issue relating to the Asserted Patents.  Even if only some of the asserted claims are
12 cancelled, the IPR process will "simplify the issues and streamline the litigation by reducing claim
13 construction disputes and minimizing the number of claims that the parties need to address." *Tire*
14 *Hanger Corp. v. My Car Guy Concierge Servs. Inc.*, No. 5:14-cv-00549-ODW, 2015 WL 857888,
15 at *2 (C.D. Cal. Feb. 27, 2015).

16        Here, there is a strong likelihood that the PTAB will institute the IPRs based on the
17 substantial evidence presented in Apple's petitions.  Apple's IPR petitions challenge each of RNN
18 Trust's asserted claims and establish that those claims are not patentable in light of the prior art.
19 Thus, this entire action will be rendered moot if the PTAB cancels all the claims, and even if the
20 PTAB cancels a portion of the claims, the scope of the litigation will be significantly reduced*. See*
21 *Nichia Corp. v. Vizio, Inc.*, SACV 18-00362 AG (KESx), 2018 WL 2448098, at *2 (C.D. Cal.
22 May 21, 2018) ("If the PTAB cancels all of the asserted claims, this action will be rendered moot.
23 If the PTAB cancels or narrows a portion of the asserted claims, the scope of this litigation may be
24 significantly reduced."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir.
25 2013) ("when a claim is cancelled, the patentee loses any cause of action based on that claim, and
26 any pending litigation in which the claims are asserted becomes moot").

27        Statistics from the PTAB provide further proof that IPRs are likely to dispose of or narrow
28 this case.  According to PTAB statistics, in 2022, the PTAB instituted review for almost seventy

percent (70%) of patents on which IPRs were filed. Quisenberry Decl., Ex. D (PTAB Trial Statistics) FY22 Q3 Outcome Roundup IPR, PGR). For the period from October 1, 2021, to June 30, 2022, the PTAB instituted review for sixty-six percent (66%) of IPR petitions when the challenged technology related to electrical or computer-based technology. *Id.* Additionally, for the period from October 1, 2021, to June 30, 2022, IPR petitions that reached final written decision resulted in the cancellation of at least some instituted claims in eighty-three percent (83%) of cases and resulted in cancellation of all instituted claims in sixty-seven percent (67%) of cases. *Id.* Apple's success rate in challenging patents through IPRs has been even higher. *See* Quisenberry Decl., Ex. E [Lex Machina Statistics] (eighty-eight percent (88%) of Apple-filed IPRs resulting in final determination result in cancellation of some claims, and seventy-one percent (71%) result in cancellation of all instituted claims). Thus, PTAB statistics further demonstrate that IPR petitions are virtually certain to narrow the issues in this case.

The prospect of simplification, however, does not depend on Apple's prevailing on all, or even any, claims in the IPR due to estoppel. If the IPRs are instituted and proceed to a final written decision, Apple will be estopped from re-arguing invalidity to the jury based on grounds that were "raised or that reasonably could have been raised during [the] *inter partes* review." 35 U.S.C. § 315(e)(2); *see also* Quisenberry Decl. Ex. A at 85; Quisenberry Decl. Ex. B at 85. Further, the fact that the PTAB had upheld certain claims would "assist in streamlining the presentation of evidence and benefit the trier of fact by providing the expert opinion of the PTO." *PersonalWeb Techs., LLC v. Facebook, Inc*, 2014 WL 116340, at *4. Under this scenario, there would be fewer prior art grounds that could be raised, and the Court would benefit from the PTAB's analysis, and any potential disclaimers made by RNN Trust in the IPR proceedings. *See Finjan*, 139 F. Supp. 3d at 1036 ("Staying the case pending the outcome of IPR could simplify the case by rendering some or all of Finjan['s] infringement claims moot, estopping Symantec from asserting any arguments it raised or reasonably could have raised in the IPR and providing the Court with PTAB's expert opinion on the claims at issue."). Further, RNN Trust itself has indicated a desire to proceed efficiently in this case, indicating that it does not intend to review

Apple's source code until after the Court issues a claim construction order.  Quisenberry Decl. Ex. C.

This is especially true given the significant overlap between the Asserted Patents and their claims.  The Asserted Patents share a common specification and are both titled "Cellular Device Security Apparatus and Method."  *See* ECF 1-1; 1-2.  As can be seen from the two exemplary asserted claims reproduced below, the independent asserted claims are nearly identical:

| '544 Patent Claim 4 | | '002 Patent Claim 5 | |
|---|---|---|---|
| # | Claim Limitation | # | Claim Limitation |
| 4(p) | A cellular communication device having | 5(p) | A cellular communication device comprising |
| 4.1 | a processor, | 5.1 | a processor, |
| 4.2 | memory | 5.2 | a memory |
| 4.3 | and a data mode, said data mode allowing reading and writing and changing of data and settings on said cellular communication device, including storing, modifying or replacing an operating system stored in said memory in an active connection; | 5.3 | and a data mode, said data mode allowing reading and writing of data in said memory and changing of settings on said cellular communication device, |
| 4.4 | said data and settings comprising personal data, configuration data and technical data relating to said cellular communication device, | 5.4 | said settings comprising personal data, cellular communication device configuration data and technical data relating to the cellular communication device; wherein |
| 4.5 | said cellular communication device further comprising an access restrictor to restrict use of said data mode in accordance with a device unique security setting: | 5.5 | said cellular communication device also comprises an access restrictor to restrict use of said data mode in accordance with a device unique security setting, |
| 4.6i | wherein said device unique security setting is obtained remotely and provided to said cellular communication device before the access data mode is used, | 5.6i | the device unique security setting provided remotely to said cellular communication device using a predetermined security protocol; |
| 4.6ii | wherein said device unique security setting is dynamically changed after use of said data mode, | 5.6ii | said device unique security setting is obtained remotely and provided to the cellular communication device before the data mode is used; |
|  |  | 5.7 | said data mode permits actions comprising uploading, maintaining or replacing an operating system in said cellular communication device |

| | | | |
|---|---|---|---|
| | | | that are provided by a cellular provider using an active connection; |
| 4.7 | the cellular communication device being configured to carry out one member of the group consisting of:<br><br>using said data mode when it determines that said device unique security setting is correct; and<br><br>monitoring said active connection, and disabling said data mode when said active connection is not active. | 5.8 | the device further being configured to carry out one member of the group consisting of:<br><br>enabling said cellular communication device to use said data mode when it is determined that said device unique security setting is correct; and<br><br>disabling use of said data mode when said active connection is no longer active. |

*Id*. (comparing '554 patent cl. 4 and '002 patent cl. 5; note that limitation 5.7 corresponds to the second half of limitation 4.3). This is confirmed by the fact that RNN Trust issued a terminal disclaimer for the '002 patent to overcome an obviousness-type double-patenting rejection from the U.S. Patent and Trademark Office relating, in part, to U.S. Patent Application No. 14/591,108, which issued as the '544 patent. *See* Quisenberry Decl., Ex G, Aug. 24, 2015 Applicant Remarks Made in an Amendment, at 10.

In sum, regardless of the outcome of the IPRs, they will simplify the issues in this case and reduce the burden on the Court and parties. Thus, this factor also strongly favors a stay.

### C. RNN Trust Will Suffer No Undue Prejudice or Tactical Disadvantage From A Stay

The lack of undue prejudice to RNN Trust also favors a stay. RNN Trust is a non-practicing entity that licenses its intellectual property and does not make any product that practices the patented technologies. Quisenberry Decl. Ex. F, RNN Trust July 11, 2022 Obj. & Resp. to Apple Rog. 8. Accordingly, RNN Trust does not compete directly with Apple and would not suffer any competitive harm from a stay. *Cypress Semiconductor Corp. v. LG Elecs., Inc.*, No. 13-cv-04034-SBA, 2014 WL 5477795, at *2-3 (N.D. Cal. Oct. 29, 2014); *IXI Mobile (R & D) Ltd. v.*

1  *Samsung Elecs. Co Ltd*, No. 15-CV-03752-HSG, 2015 WL 7015415, at *4 (N.D. Cal. Nov. 12,
2  2015).

3        Nor can RNN Trust argue that a stay would be unduly prejudiced merely because it may be
4  delayed in enforcing its patent rights against Apple.  "Courts have repeatedly found no undue
5  prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily
6  inherent in any stay." *PersonalWeb Technologies, LLC v. Apple Inc.*, 69 F. Supp. 3d at 1029;
7  *Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK, 2018 WL 1609630, at *2 (N.D. Cal. Apr.
8  3, 2018) ("The delay inherent to the reexamination process does not generally constitute, by itself,
9  undue prejudice.").  This is because, unless "the parties are direct competitors and . . . the
10 plaintiff's competitive position would be prejudiced by a stay," a plaintiff "can be fully restored to
11 the status quo ante with monetary relief." *Finjan*, 139 F. Supp. 3d at 1038; *see DSS Tech. Mgmt.,*
12 *Inc. v. Apple Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015).
13 RNN Trust faces no harm to its competitive position and thus can claim no prejudice from a stay.

14       Finally, there is no risk of an indefinite or unbounded stay.  The expedited and time-
15 bounded nature of the IPR process would minimize any prejudice alleged by RNN Trust.  Subject
16 to very narrow exceptions, the PTAB is required by statute to complete proceedings "not later than
17 1 year after" the IPR is instituted.  35 U.S.C. 316(a)(11); *see, e.g., Advanced Micro Devices, Inc.*
18 *v. LG Elecs., Inc.*, No. 14-CV-01012-SI, 2015 WL 545534, at *4 (N.D. Cal. Feb. 9, 2015) (finding
19 no prejudice due to "expedited IPR resolution").  Here, the PTAB will issue its decision around
20 May 2024.

21       In short, this factor favors a stay.  RNN Trust is a non-practicing entity that does not
22 compete directly with Apple and would not suffer any competitive harm from a stay.  A mere
23 delay in enforcing its patent rights does not unduly prejudice RNN, and any conceivable harm
24 RNN may suffer from a stay can be remedied with monetary damages.  Additionally, there is no
25 risk of an indefinite stay because the PTAB will issue its decision around May 2024.  Thus, the
26 lack of undue prejudice to RNN Trust weighs heavily in favor of granting Apple's motion.

## V. CONCLUSION

Because the relevant factors support a stay of this action pending resolution of Apple's IPR petitions, Apple respectfully requests that the Court grant its motion to stay the present action pending final, non-appealable resolution of Apple's IPRs related to the '544 and '002 Patents.

Dated: November 28, 2022                        FISH & RICHARDSON P.C.


                                                By: /s/ Kathryn Quisenberry
                                                    Kathryn Quisenberry

                                                Attorneys for Defendant
                                                APPLE INC.